IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DERRYEL LEE,

                    Plaintiff,

v.

G. GULICK, MR. DEFRANCE, WICK, MS.
CURTIS, DR. KOLTES, MR. WHITE, and DR.
STEVEN SHELTON,

                    Defendants.

2:17-CV-42-PK

OPINION AND
ORDER

---

PAPAK, Magistrate Judge:

       Plaintiff Derryel Lee, an inmate of the Snake River Correctional Institution ("SRCI"),

filed this action *pro se and in forma pauperis* against defendants Brad Cain, G. Gulick, Mr.

DeFrance, Wick, Ms. Hughes, First Btts Counselor, Ms. Curtis, S. Cook, S. Meehem, Dr. Koltes,

Mr. Taylor, M. Peterson, Mr. White, Medical Dept., M. Nooth, Steve Shelton, and several fictitiously named defendants on January 9, 2017. On March 22, 2017, Judge King dismissed Lee's claims in part, and expressly granted leave for Lee to amend his complaint to cure the deficiencies identified therein. Lee amended his complaint effective June 26, 2017, abandoning his claims to the extent alleged against Cain, Hughes, First Btts Counselor, S. Cook, S. Meehem, Mr. Taylor, M. Peterson, M. Nooth, Medical Dept, and the fictitiously named defendants. By and through his complaint, Lee alleges that remaining defendants Gulick, Koltes, Shelton, Wick, Curtis, White, and DeFrance willfully failed to provide him with appropriate medical care, including in particular pain management care. Arising out of the foregoing, Lee alleges the remaining defendants' liability under 42 U.S.C. § 1983 for the violation of his Eighth Amendment right to freedom from cruel and unusual punishment. Lee seeks injunctive relief to enjoin Gulick and Koltes from further involvement in his medical care and to enjoin the other remaining defendants to provide him with treatment appropriate to his medical condition, as well as award of $2,000,000 in damages for pain and suffering, and award of his costs and fees incurred herein. This court has federal question jurisdiction over Lee's action pursuant to 28 U.S.C. § 1331.

Now before the court is defendants' motion (#37) for summary judgment, by and through which defendants argue that Lee has failed to exhaust all administrative remedies available to him at SRCI regarding defendants' complained-of conduct, depriving this court of jurisdiction to consider Lee's claim pursuant to the Prison Litigation Reform Act (the "PLRA"). I have considered the motion and all of the pleadings and papers on file. For the reasons set forth below, defendants' motion is denied in its entirety.

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party taking the position that a material fact either "cannot be or is genuinely disputed" must support that position either by citation to specific evidence of record "including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," by showing that the evidence of record does not establish either the presence or absence of such a dispute, or by showing that an opposing party is unable to produce sufficient admissible evidence to establish the presence or absence of such a dispute. Fed. R. Civ. P. 56(c). The substantive law governing a claim or defense determines whether a fact is material. *See Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365, 369 (9th Cir. 1998).

Summary judgment is not proper if material factual issues exist for trial. *See, e.g., Celotex Corp. v. Catrett*, 477 U.S. 318, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995). In evaluating a motion for summary judgment, the district courts of the United States must draw all reasonable inferences in favor of the nonmoving party, and may neither make credibility determinations nor perform any weighing of the evidence. *See, e.g., Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 554-55 (1990); *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000).

## FACTUAL BACKGROUND

### I.     The Parties

Plaintiff Lee is an incarcerated prisoner housed at all material times at the Snake River

Correctional Institution.

Defendants Gulick and Koltes are alleged to be physicians employed by SRCI to provide medical services to its inmates. Defendant Shelton is the Medical Director of ODOC. Defendants Wick, Curtis, and White are alleged to be nurses employed by SRCI to provide medical services to its inmates. Defendant DeFrance is alleged to be a security officer employed by SRCI.

## II.    Material Facts

### A.    The Administrative Remedy Program at SRCI

Lee has at all material times been housed at SRCI. At SRCI, Lee had available to him a three-level grievance procedure consistent with the regulations set forth in Chapter 291, Division 109 of the Oregon Administrative Rules.

Pursuant to the SRCI grievance procedures and applicable Oregon Administrative Rules, "[i]f an inmate is unable to resolve an issue through informal communications, . . . the inmate [may] seek resolution of the issue by submitting a written grievance using the department's approved inmate grievance form (CD 117). . . ." OAR-291-109-0140(1)(a). Any such grievance "must include a complete description of the incident, action, or application of the rule being grieved, including date and approximate time," and should be accompanied by any referenced documents. OAR-291-109-0140(1)(b). Matters, actions, and incidents that an inmate may properly grieve are the "misapplication of any administrative directive or operational procedure," the "lack of an administrative directive or operational procedure," any "unprofessional behavior or action which may be directed toward an inmate by an employee or volunteer of [ODOC] or the Oregon Corrections Enterprises," any "oversight or error affecting an inmate," any "program

failure as defined in . . . OAR-291-077-0020," except where such failure was caused by the inmate's misconduct, the "loss or destruction of [the inmate's] property," sexual conduct between an ODOC employee and an inmate, or sexual abuse of an inmate by another inmate. OAR-291-109-0140(2). "An inmate grievance may request review of just one matter, action, or incident per inmate grievance form." OAR-291-109-0140(1)(d). Similarly, inmates are not permitted to grieve the actions of more than one ODOC employee through a single grievance form, but rather must file one grievance form per ODOC employee whose actions are the subject of the inmate's challenge. *See* OAR-291-109-0140(5). In addition, inmates are not permitted to grieve any claim or issue "that the inmate is pursuing in pending litigation in state or federal courts." OAR-291-109-0140(3)(h). A grievance will not be processed unless it is received by the applicable grievance coordinator on form CD 117 "within 30 calendar days of the date of the incident giving rise to the grievance." OAR-291-109-0150(2).

Inmates are permitted to file "no more than two initial inmate grievances in any one week or six in any calendar month," other than grievances regarding sexual abuse, and other than separate grievances grieving multiple ODOC staff members in connection with the same incident. OAR-291-109-0180(1). Grievances filed in excess of those limits are summarily denied with the notation that the inmate has committed "abuse" of the grievance system. *Id.*

Upon receipt of an inmate grievance, a grievance coordinator is required to "assign the grievance a number," date stamp the grievance, "and record its receipt in an inmate grievance log" and to "send a grievance receipt to the inmate." OAR-291-109-0160(1) and (1)(a). The grievance coordinator is then required to coordinate with the ODOC employee best suited to respond to the grievance, and to send the inmate's grievance to that person "for reply." OAR-

291-109-0160(1)(b). The response must "be returned to the grievance coordinator for processing within 21 calendar days." OAR-291-109-0160(1)(c). Following such processing, the grievance coordinator is required to send the inmate copies of both the grievance and the response, and to retain copies for the grievance coordinator's files, all within "45 days from the date the grievance was received" by the grievance coordinator, "unless further investigation is necessary." OAR-291-109-0160(2). In the event the grievance coordinator fails to complete processing of the grievance within 45 days of its receipt, "the grievance coordinator will make an effort to notify the inmate of the status of the grievance." *Id.* "If the inmate does not receive a response within the allotted time frame, he/she may contact the grievance coordinator." *Id.*

"If at any time the grievance coordinator determines the inmate has pursued his/her grievance through state or federal courts, the grievance process will cease and the grievance will be returned to the inmate." OAR-291-109-0160(4). "A grievance that has been returned to [an] inmate by the grievance coordinator for procedural reasons cannot be appealed." OAR-291-109-0160(5).

An inmate may appeal the institutional response to the inmate's grievance by and through "the grievance appeal form (CD 117c)." OAR-291-109-0170(1)(a). Any such appeal "must be submitted to the grievance coordinator together with the original grievance, attachments, and staff response(s)." *Id.* The scope of the originally submitted grievance cannot be expanded on appeal, and the inmate is not permitted to add new information regarding the grieved incident on appeal, except where such information was unavailable to the inmate at the time the original grievance was filed. *See id.* Any such appeal must be received by the grievance coordinator "within 14 days from the date that the grievance response was sent to the inmate from the

grievance coordinator." OAR-291-109-0170(1)(b). The grievance coordinator is required to send the appeal to the "functional unit manager," who is required to respond to the appeal "within 30 calendar days." OAR-291-109-0170(1)(c). The grievance coordinator is then required to send the functional unit manager's appeal response to the inmate. *See id.*

In the event an inmate wishes to appeal the functional unit manager's decision regarding a grievance appeal, the inmate may do so "using the grievance appeal form (CD 117c)." OAR-291-109-0170(2)(a). Any such appeal "must be submitted to the grievance coordinator together with the original grievance, attachments, staff responses, and documentation related to the first grievance appeal." *Id.* The grievance coordinator must receive any such appeal "within 14 calendar days from the date that the first grievance appeal response was sent to the inmate from the grievance coordinator." OAR-291-109-0170(2)(c). As with the first appeal, appeal of the functional unit manager's response cannot expand the scope of the original grievance, and cannot adduce new information regarding the originally grieved incident, except where such information was unavailable to the inmate at the time the original grievance or first appeal was filed. *See* OAR-291-109-0170(2)(a). The grievance coordinator is required to forward any such appeal to "the Assistant Director having authority to review and resolve the issue." *Id.*

The Assistant Director with such authority is required to respond to any such appeal from a functional unit manager's grievance appeal response "within 30 calendar days." OAR-291-109-0170(2)(e). "The Assistant Director's . . . decision on an inmate's grievance appeal is final, and is not subject to further [administrative] review." OAR-291-109- 0170(2)(f).

## B. The Parties' Dispute

As noted above, defendants move for summary adjudication of Lee's claims on the sole

basis of Lee's purported failure to exhaust all administrative remedies in support of his claims. In

consequence, the parties do not, at this stage of these proceedings, offer evidence in connection

with the merits of Lee's claims, but rather offer evidence only in connection with the question

whether Lee exhausted available remedies. I therefore recite here only a summary of Lee's

allegations regarding the merits of his claims. I will discuss the parties' evidentiary proffers (in

light of the legal standard governing motions for summary judgment under Federal Civil

Procedure Rule 56) within the Analysis section below.

Lee alleges that he is severely mentally ill and that he has "suffered from pain and

numbness in the legs, back[,] and neck for many years." Complaint, 2. Lee further alleges that

the defendants herein have failed to provide him with adequate medical care in connection with

his pain symptoms out of deliberate indifference amounting to the wanton infliction of pain. *See

id.*, 2-3. Lee alleges that such failure to provide adequate medical care specifically includes:

(i) failure to prescribe him adequate pain management medication in connection with his chronic

leg, back, and neck pain, (ii) failure to order MRI or CT scans of the affected areas, (iii) failure to

refer his case to outside medical specialists, and (iv) causing him to experience painful skin

lesions due to an allergic reaction to the pain medication Tramadol. *See id.*

## ANALYSIS

### I.    The Prison Litigation Reform Act

Pursuant to the Prison Litigation Reform Act, incarcerated plaintiffs are required to

exhaust all administrative remedies available to them within the institutions in which they are

housed before bringing any federal action in connection with prison conditions, including such

actions brought under 42 U.S.C. § 1983:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). For purposes of the PLRA, actions brought with respect to "prison conditions" include all actions brought to challenge isolated episodes of unconstitutional or otherwise unlawful misconduct of any kind as well as prisoner petitions challenging conditions of confinement. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002). Under the PLRA, the courts lack discretion to consider claims challenging prison conditions, including claims for money damages, except where such claims are filed following complete exhaustion of available administrative remedies, without regard to the nature of the administrative remedies available under such administrative grievance procedures. *See id.* at 524, *citing Booth v. Churner*, 532 U.S. 731, 739, 740 n. 5, 741 (2001).

Inmates are not required to plead or demonstrate exhaustion before bringing prison-conditions lawsuits. *Jones v. Bock*, 549 U.S. 199, 216 (2007). To the contrary, an incarcerated plaintiff's failure to satisfy the PLRA exhaustion requirement is an affirmative defense that is the burden of the defendant in a prison-conditions lawsuit to raise and prove. *See id.* Following the Ninth Circuit's *en banc* decision in *Albino v. Baca*, 747 F.3d 1162 (9th Cir. 2014), the courts of the Ninth Circuit treat challenges to a prisoner's exhaustion of administrative remedies as motions for summary judgment if premised on proffered evidence, and as motions to dismiss for failure to state a claim if premised on the incarcerated plaintiff's pleading alone. *See Albino*, 747 F.3d at 1166. Here, defendants have properly brought their evidence-based challenge to Lee's exhaustion of administrative remedies as a motion for summary judgment.

"If undisputed evidence viewed in the light most favorable to the prisoner shows a failure

to exhaust, a defendant is entitled to summary judgment under Rule 56." *Id.* However, "[i]f material facts are disputed, summary judgment should be denied, and [following such denial] the district judge rather than a jury should determine the facts." *Id.* The *Albino* court specified that the court should act as the finder of fact in connection with an exhaustion challenge "in a preliminary proceeding," *id.* at 1168, "if feasible, before reaching the merits of a prisoner's claim," *id.* at 1170. Such preliminary proceeding is to be conducted "in the same manner a judge rather than a jury decides disputed factual questions relevant to jurisdiction and venue," *id.*, which is to say via a plenary evidentiary hearing to be conducted in a manner within the discretion of the court, *see, e.g., Data Disc, Inc. v. Systems Technology Associates, Inc.*, 557 F.2d 1280, 1285, 1285 n. 2 (9th Cir. 1977).

For purposes of the PLRA, "complete exhaustion" of available administrative remedies requires that an inmate "complete the administrative review process in accordance with [all] applicable procedural rules, including deadlines. . . ." *Marella v. Terhune*, 568 F.3d 1024, 1027 (9th Cir. 2009), *quoting Woodford v. Ngo*, 548 U.S. 81, 88 (2006). Indeed, as the Supreme Court established in *Woodford*, "proper exhaustion of administrative remedies. . . 'means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).'" *Woodford*, 548 U.S. at 90 (emphasis original), *quoting Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002). The *Woodford* court reasoned that to hold otherwise would permit prisoners to render the PLRA exhaustion requirement "wholly ineffective" by defaulting in the performance of administrative requirements and then claiming exhaustion by virtue of such procedural default. *Id.* at 95. Under *Woodford*, only proper exhaustion of administrative requirements, including compliance with deadlines and performance of all procedural requisites,

is sufficient to satisfy the requirements of the PLRA. *See id.* at 90-91 ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules. . . .").

Notwithstanding the foregoing, it is clear that there are circumstances in which the courts will deem available administrative remedies exhausted even in the absence of full compliance with a prison's administrative grievance procedure. The Supreme Court recently held that there are at least three sets of circumstances in connection with which a prisoner who fails or omits properly to follow such a grievance procedure through its final step will be deemed to have exhausted such administrative remedies as are "available" for PLRA purposes: where remedies are functionally unavailable through the procedure because prison officials are "unable or consistently unwilling to provide any relief to aggrieved inmates," *Ross v. Blake*, 136 S. Ct. 1850, 1859 (2016), *citing Booth*, 532 U.S. at 736, 738, where the administrative procedure is too confusing, baroque, or flawed to be navigated to completion by a reasonable prisoner, *see id.*, or where prison officials thwart prisoners' efforts properly to exhaust available administrative remedies "through machination, misrepresentation, or intimidation," *id.* at 1860. The Ninth Circuit has held that where prison officials' conduct would tend to thwart a reasonable prisoner's efforts properly to exhaust available administrative remedies, further administrative procedures are effectively unavailable to the prisoner even in the absence of bad faith or deliberate obstruction. *See Nunez v. Duncan*, 591 F.3d 1217, 1226 (9th Cir. 2010).

Moreover, the PLRA contains no requirement that prisoners identify by name in grievances filed through a prison's administrative remedy procedure all persons the prisoner later names as a defendant in a lawsuit filed in federal court. *See Jones*, 549 U.S. at 217-219. "The level of detail necessary in a grievance to comply with the grievance procedures will vary from

system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id.* at 218. The Ninth Circuit has held in this connection that even where a prison's administrative grievance procedure expressly requires such identification, where such a prison decides a grievance on its merits notwithstanding a prisoner's failure to identify by name all prison officials whose conduct was the subject of the prisoner's grievance, "the purposes of the PLRA exhaustion requirement have been fully served: prison officials have had a fair opportunity to correct any claimed deprivation and an administrative record supporting the prison's decision has been developed." *Reyes v. Smith*, 810 F.3d 654, 658 (9th Cir. 2016), *citing Porter*, 534 U.S. at 525. "Dismissing the inmate's claim for failure to exhaust under these circumstances does not advance the statutory goal of avoiding unnecessary interference in prison administration." *Id.*, *citing Woodford*, 548 U.S. at 93. "Rather, it prevents the courts from considering a claim that has already been fully vetted within the prison system." *Id.* On that basis, the Ninth Circuit held that a prisoner has exhausted available administrative remedies for PLRA purposes "despite failing to comply with a procedural rule" requiring identification by name of all prison officials whose conduct was grieved "if prison officials ignore the procedural problem and render a decision on the merits of the grievance at each available step of the administrative process." *Id.*

## II.    Exhaustion of Available Administrative Remedies

The parties offer evidence tending to establish that Lee has filed numerous grievances regarding the medical treatment he has received while incarcerated at SRCI. Because of the large volume of such grievances, I discuss below the evidentiary facts regarding Lee's grievances only to the extent they have any potential to bear on the question whether Lee exhausted all available

administrative remedies regarding the alleged deprivations underlying his claim before he initiated these proceedings.

## A. The Period Between July 31, 2015, and December 10, 2015

Lee offers the Declaration (#49-1) of Travis Stafford ("Stafford Decl."), by and through which Stafford, an SRCI inmate assigned to assist Lee by pushing his wheelchair, testifies that SRCI Grievance Coordinator James A. Taylor told Lee to "stop putting grievances in the grievance box." Stafford Decl at 1. Stafford's testimony does not indicate the approximate date when this occurred, but Lee's discussion of the events to which Stafford testifies strongly suggests that if Stafford's testimony is accurate, Taylor issued the instruction to stop submitting grievances through the ordinary submission protocol at some time in late July 2015. At this stage of these proceedings, naturally, I assume the accuracy of Stafford's testimony.

Lee's discussion suggests that in connection with the injunction against submitting grievances through the standard protocol, Taylor told him that he would be put on callout to see Taylor in person once weekly, at which occasions Lee could submit any grievances he had accumulated since the last such occasion in person, in lieu of placing them in the grievance box. This assertion finds some support in Stafford's testimony that for a period of time he would take Lee "to see Mr. Taylor every Friday morning" until some imprecisely specified time (apparently a few weeks after Taylor initially instructed Lee to stop using the grievance box, *see id.*) when Lee stopped being placed on callout to see Taylor. *Id.* Lee's discussion further suggests that there was thereafter a period of approximately four months during which Lee had no opportunity to see Taylor in order to submit grievances in person. This proposition likewise finds support in Stafford's testimony, specifically his testimony that after Lee stopped being placed on callout to

see Taylor, Stafford "checked the callouts religiously and [Lee] wasn't on callout" for some unspecified period of time thereafter. *Id.* Lee states that on December 10, 2015, he was for the first time in four months permitted to see Taylor and to submit his accumulated grievances and grievance appeals. Lee suggests that at that time he submitted the grievances and grievance appeals that he had been accumulating – but not depositing in the grievance box in compliance with Taylor's injunction against doing so – since late July 2015.

Defendants' proffered evidence does not contradict or call into question any element of Lee's description of events. First, defendants offer into evidence a summary of grievances filed by Lee during the period from August 1, 2012, through August 31, 2017. *See* Declaration (#38) of James A. Taylor ("Taylor Decl."), Exh. 2 ("Inmate Complaint History"). The summary indicates that over the approximately five-year period it covers, Lee filed one or more grievances in most months, with only one filing hiatus in excess of approximately one month, namely the approximately four month period from late July through December 10, 2015. *See* Inmate Complaint History, *passim.* In addition, the summary indicates that Lee filed 14 discrete grievances or grievance appeals on December 11, 2015, by far the most grievances filed by him on a single day during the covered period. *See id.* at 3-4, *passim.* Lee's pattern of grievance submissions as reflected in the Inmate Complaint History is thus entirely consistent with both Lee's discussion and Stafford's sworn testimony.

Second, Taylor expressly testifies in connection with several of Lee's efforts to exhaust administrative remedies in connection with his various grievances (including in particular grievances regarding the alleged deprivations at issue herein) that, for example, after filing a timely grievance and a timely first appeal from SRCI's response thereto, "Lee wrote a second

appeal on July 31, 2015, but he did not submit that appeal until December 10, 2015," rendering the second appeal in his opinion untimely as having been submitted more than fourteen days after SCRI's response to Lee's first appeal. Taylor Decl., ¶ 17 (Grievance No. SRCI. 2015.05.30); *see also id.*, ¶¶ 18 (Grievance No. SRCI. 2015.06.130), 20 (Grievance No. SRCI. 2015.12.106), 21 Grievance No. SRCI. 2015.12.109), 22 (Grievance No. SRCI. 2015.12.115) (each, describing a grievance or grievance appeal which would have been timely if submitted when written but which was deemed untimely when submitted on December 10, 2015). In addition, Taylor testifies that all subsequent grievances Lee filed in the month of December 2015 (that is, all grievances filed in that month subsequent to his batch-filing of 14 grievances on December 10, 2015) were summarily denied and returned to Lee as abuse of the grievance system in that Lee had already filed the maximum allowable six grievances per month. *See id.*, ¶¶ 23 (Grievance No. SRCI. 2015.12.223), 24 (Grievance No. SRCI. 2015.12.224). Although Taylor omits to testify as to whether he instructed Lee to stop submitting grievances using the grievance box, whether he instructed Lee to submit grievances in person on a weekly basis, and/or whether he stopped placing Lee on callout to meet with him regarding grievances rendering the grievance process unavailable to Taylor for a period of approximately four months, the pattern of grievance submissions Taylor describes in his testimony is precisely consistent with Lee's account.

Third, a large number of Lee's potentially material grievances and appeals are attached as exhibits to Taylor's declaration. *See id.*, Exh. 3-21. Of these, several (including those as to which Taylor offered testimony that the grievances or appeals would have been timely if submitted when written but were deemed untimely when submitted on December 10, 2015, and also including additional instances of the same pattern) were denied as untimely when submitted

on December 10, 2015, notwithstanding that they bear handwritten dates suggesting that they would have been timely if submitted as of the date they were written. *See id.*, Exh. 6 at 10-11 (Grievance No. SRCI.2015.05.30), Exh. 7 at 16-17 (Grievance No. SRCI.2015.06.130), Exh. 9 at 1-2 (Grievance No. SRCI.2015.12.106), 3-4 (Grievance No. SRCI.2015.12.107), 5-6 (Grievance No. SRCI.2015.12.108), 7-8 (Grievance No. SRCI.2015.12.109), 9-10 (Grievance No. SRCI. 2015.12.110), Exh. 10 at 1-2 (Grievance No. SRCI.2015.12.109), Exh. 11 at 1-2 (Grievance No. SRCI.2015.12.115). In addition, at least two of Lee's potentially material grievances and appeals were returned to Lee after summary denial as abuse of the grievance system because they were filed between December 11 and 31, 2015, after Lee had submitted his fourteen accumulated grievances on December 10, 2015. *See id.*, Exh. 12 at 1-2 (Grievance No. SRCI. 2015.12.223), Exh. 13 at 1-2 (Grievance No. SRCI. 2015.12.224). The grievances themselves thus provide unambiguous support both for Lee's discussion and Stafford's testimony regarding the availability of the grievance process to Lee from late July through December 10, 2015, and are likewise entirely consistent with Taylor's testimony regarding the disposition of the subject grievances.

Notwithstanding the foregoing, in reply to Lee's opposition memorandum defendants' attorney Nathaniel Aggley expressly misrepresents to the court that Lee "did not provide the Court with any evidence to show that he was prevented or hindered from filing grievances," Reply Memorandum (#50) at 2, that Stafford testifies that Lee was able to meet with Taylor "every Friday morning" during the approximately four months preceding December 10, 2015, *id.*, and that Lee concedes that during that period "he continued to file grievances," *id.* at 2-3. In addition, Aggley affirmatively misrepresents to the court as follows:

> Moreover, Plaintiff's alleged lack of ability to file grievances between 8/4/2015 – 12/10/2015 is not supported by the evidence. Copies of grievances and grievance

appeals filed by Plaintiff can be found in Defense exhibits 6, 9, 10, and 11, which are attached to the declaration of James Taylor. Those exhibits show that Plaintiff was able to file grievances and grievance appeals during that time period: On August 19, 2015, Plaintiff filed grievance SRCI.2015.12.108; on September 8, 2015, Plaintiff filed grievance SRCI.2015.12.109; on September 20, 2015, Plaintiff filed appeals to grievances SRCI.2015.05.030 and SRCI.2015.06.130, and on October 2, 2015, Plaintiff filed grievances SRCI.2015.12.106, SRCI.2015.12.107, SRCI.2015.12.110, and SRCI.2015.12.115. Therefore, Plaintiff's alleged lack of ability to file grievances is not supported by the evidence.

*Id.* at 3 (footnote omitted). Each of Aggley's quoted assertions to the court is patently inaccurate.

As noted above, Lee has provided the court with Stafford's testimony that Taylor told Lee to

"stop putting grievances in the grievance box," Stafford Decl at 1, and that during the

approximately four-month period at issue Lee's formerly standing weekly appointment with

Taylor did not take place, *see id.*, and in addition Lee expressly and clearly asserts to the court

that he was unable to file grievances during that same period. As to Aggley's assertions to the

court that Lee in fact filed specific, identified grievances during the period of approximately four

months preceding December 10, 2015, every one of those assertions is flatly contravened by the

documentary evidence Aggley cites (and offers) in support, and in most instances also by Taylor's

express declaration testimony. In fact, defendants' proffered evidence tends to establish that

Grievance No. SRCI.2015.12.108 was timely written on August 19, 2015, but was time-stamped

as received on December 10, 2015, and was denied as untimely submitted and as constituting

abuse of the grievance system on December 11, 2015, *see* Taylor Decl., Exh. 9 at 5-6, that

Grievance No. SRCI.2015.12.109 was timely written on September 8, 2015, but was time-

stamped as received on December 10, 2015, and was denied as untimely submitted and as

constituting abuse of the grievance system on December 11, 2015, *see* Taylor Decl., ¶ 21, Exh. 9

at 7-8, that Lee's second appeal to Grievance No. SRCI.2015.05.30 was timely written on

Page 17 - OPINION AND ORDER

September 20, 2015, but was time-stamped as received on December 10, 2015, and was denied as untimely submitted on December 11, 2015, *see* Taylor Decl., ¶ 17, Exh. 6 at 10-11, that Lee's second appeal to Grievance No. SRCI.2015. 06.130 was timely written on September 20, 2015, but was time-stamped as received on December 10, 2015, and was denied as untimely submitted on December 11, 2015, *see* Taylor Decl., ¶ 18, Exh. 7 at 16-17, that Grievance No. SRCI.2015. 12.106 was timely written on October 2, 2015, but was time-stamped as received on December 10, 2015, and was denied as untimely submitted on December 11, 2015, *see* Taylor Decl., ¶ 20, Exh. 9 at 1-2, that Grievance No. SRCI.2015.12.107 was timely written on October 2, 2015, but was time-stamped as received on December 10, 2015, and was denied as untimely submitted on December 11, 2015, *see* Taylor Decl., Exh. 9 at 3-4, that Grievance No. SRCI.2015.12.110 was timely written on October 2, 2015, but was time-stamped as received on December 10, 2015, and was denied as untimely submitted and as constituting abuse of the grievance system on December 11, 2015, *see* Taylor Decl., Exh. 9 at 9-10, and that Grievance No. SRCI.2015.12.115 was timely written on October 2, 2015, but was time-stamped as received on December 10, 2015, and was denied as untimely submitted, as constituting abuse of the grievance system, and as failing to offer a complete description of the incident being grieved on December 11, 2015, *see* Taylor Decl., ¶ 22, Exh. 11 at 1-2.

In light of the unambiguous evidence of record and of the Ninth Circuit and Supreme Court jurisprudence discussed above, I find that Lee exhausted all available administrative remedies in connection with each grievance in connection with which he prepared a grievance or a grievance appeal on a timely basis between late July and December 10, 2015, but did not submit the grievance until December 10, 2015, whereupon the grievance or appeal was denied as

untimely submitted (except where such grievance or grievance appeal would have been denied as abuse of the grievance system as in excess of the monthly or weekly limits on grievance submissions had such grievance or grievance appeal been filed when prepared). While I express no opinion as to whether Taylor's injunction that Lee cease submitting grievances through the grievance box was reasonable or unreasonable under all applicable circumstances, I find that in consequence of Taylor's injunction and of the subsequent unavailability of callouts for the purpose of in-person submission of accumulated grievances for an approximately four-month period, a reasonable inmate would have been thwarted in his or her efforts properly to comply with available administrative remedies until December 10, 2015. These are sufficient grounds for concluding that Lee exhausted such administrative remedies as were available to him for PLRA purposes in connection with such grievances or grievance appeals, *see Ross*, 136 S. Ct. at 1860, *Nunez*, 591 F.3d at 1226, and I so find. For the same or similar reasons, I find that Lee exhausted available administrative remedies in connection with grievances summarily denied as abuse of the grievance system as in excess of the monthly or weekly limits on grievance submissions by virtue of having been filed in the same month as Lee's 14 grievance submissions of December 10, 2015, except where such grievances would have been in excess of the applicable limits had Lee filed all of his grievances of December 10, 2015, on the dates he prepared them.

**B.  Grievance No. SRCI.2015.05.030**

On May 4, 2015, Lee filed Grievance No. SRCI.2015.05.030 in connection with the failure of SRCI to order an MRI scan of his head. *See* Taylor Decl., ¶ 17, Exh. 6. Although Lee appears to have wanted an imaging study in connection with a specific head injury he suffered in

his cell, his complaint appears also related to the medical condition that Lee primarily complains of herein, namely chronic leg, back, and neck pain. It is undisputed that Lee filed the initial grievance on a timely basis and that he appealed SRCI's response thereto on a timely basis. *See id.* As discussed above, the evidence of record (including Taylor's express declaration testimony) tends to establish that Lee wrote a second appeal of SRCI's response "on July 31, 2015, but . . . did not submit the appeal until December 10, 2015." *Id.* It is defendants' position that, although Lee's second appeal would have been timely submitted had it been submitted when written, it was untimely as of December 10, 2015. As SRCI did not identify any alternative or additional procedural impropriety in Lee's second appeal from Grievance No. SRCI.2015.05.030, I find (for the reasons discussed above) that Lee successfully exhausted such administrative procedures as were available to him in connection with his complaint that SRCI failed to order imaging studies in connection with his medical condition.

### C.      Grievance No. SRCI.2015.06.130

On June 19, 2015, Lee filed Grievance No. SRCI.2015.06.130 regarding an adverse reaction to the pain control medication Tramadol and regarding a purported misdiagnosis of the reaction by an SRCI physician not named as a defendant herein. *See* Taylor Decl., ¶ 18, Exh. 7. Lee complained that Tramadol was causing him to experience a skin rash. *See id.* It is undisputed that Lee filed the initial grievance on a timely basis and that he appealed SRCI's response thereto on a timely basis. *See id.* As discussed above, the evidence of record (including Taylor's express declaration testimony) tends to establish that Lee wrote a second appeal of SRCI's response "on September 20, 2015, but . . . did not submit the appeal until December 10, 2015." Taylor Decl., ¶ 18; *see also id.*, Exh. 7. It is defendants' position that, although Lee's

second appeal would have been timely submitted had it been submitted when written, it was untimely as of December 10, 2015. As SRCI did not identify any alternative or additional procedural impropriety in Lee's second appeal from Grievance No. SRCI.2015.06.130, I find (for the reasons discussed above) that Lee successfully exhausted such administrative procedures as were available to him in connection with his complaint that Tramadol caused or exacerbated his skin condition.

### D.     Grievance No. SRCI.2015.12.106

On October 2, 2015, Lee prepared Grievance No. SRCI.2015.12.106 regarding Gulick's purported misdiagnosis of Lee's "spinal trunk," with the purported result that Lee suffered unabated extreme pain symptoms. *See* Taylor Decl., ¶ 20, Exh. 9. Lee requested that his case be reviewed by an outside medical specialist. *See id.* The pain symptoms Lee associated with his "spinal trunk" condition appear to be the same that Lee complains of herein, namely chronic leg, back, and neck pain. It is undisputed that Grievance No. SRCI.2015.12.106 would have been timely filed if submitted on the day it was prepared, but that it "was not submitted until December 10, 2015," with the result that it was deemed untimely and returned to Lee. *Id.* As SRCI cut off further administrative remedies in connection with Grievance No. SRCI.2015.12. 106 without identifying any alternative or additional procedural impropriety therein, I find (for the reasons discussed above) that Lee successfully exhausted such administrative procedures as were available to him in connection with his complaint that Gulick misdiagnosed the cause of his chronic pain symptoms and prevented his case from being reviewed by an outside medical specialist.

### E.    Grievance No. SRCI.2015.12.109

On September 8, 2015, Lee prepared Grievance No. SRCI.2015.12.109 regarding Koltes'

purported failure to perform a proper examination in connection with Lee's request for treatment

of his leg and back pain. *See* Taylor Decl., ¶ 21, Exh. 10. Lee requested that his case be

reviewed by an outside medical specialist. *See id.* The leg and back pain in connection with

which Lee sought treatment from Koltes appear to be the same that Lee complains of herein,

namely chronic leg, back, and neck pain. It is undisputed that Grievance No. SRCI.2015.12.109

would have been timely filed if submitted on the day it was prepared, but that it "was not

submitted until December 10, 2015," with the result that it was deemed untimely and returned to

Lee. *Id.* As SRCI cut off further administrative remedies in connection with Grievance No.

SRCI.2015.12.109 without identifying any alternative or additional procedural impropriety

therein, I find (for the reasons discussed above) that Lee successfully exhausted such

administrative procedures as were available to him in connection with his complaint that Koltes

failed to perform a proper examination in connection with Lee's request for treatment of his leg

and back pain and prevented his case from being reviewed by an outside medical specialist.

### F.    Grievance No. SRCI.2015.12.115

On October 2, 2015, Lee prepared Grievance No. SRCI.2015.12.115, alleging that he was

being "tortured" by SRCI medical staff. *See* Taylor Decl., ¶ 22, Exh. 11. Lee requested that his

case be reviewed by an outside medical specialist. *See id.* The pain symptoms Lee complained

of by and through Grievance No. SRCI.2015.12.115 appear to be the same that Lee complains of

herein, namely chronic leg, back, and neck pain. It is undisputed that Grievance No. SRCI.2015.

12.115 would have been timely filed if submitted on the day it was prepared, but that it "was not

submitted until December 10, 2015," with the result that it was deemed untimely and returned to Lee. *Id.* As the only alternative or additional procedural impropriety identified by SRCI as justification for cutting off further administrative remedies in connection with Grievance No. SRCI.2015.12.115 was that Lee had surpassed the monthly limit for filing grievances, and as the record does not support the conclusion that the limit would have been surpassed had Lee filed all of his grievances of record as of the day he prepared them, I find (for the reasons discussed above) Lee successfully exhausted such administrative procedures as were available to him in connection with his complaint that SRCI failed to treat his chronic pain symptoms and failed to refer his case to outside medical specialists. Moreover, because SRCI did not identify Lee's failure to grieve each individual member of SRCI medical staff who failed to provide adequate care in connection with his chronic pain symptoms as a further reason for summarily returning Grievance No. SRCI.2015.12.115 unanswered, I find under *Reyes*, 810 F.3d at 658, *supra*, that SRCI's disposition of Grievance No. SRCI.2015.12.115 resulted in exhaustion of available administrative remedies as to all members of SRCI medical staff who contributed to the grieved conduct.

### G. Discussion

As discussed above, I find that Lee has exhausted all available administrative remedies for PLRA purposes in connection with his complaint that defendants failed to prescribe him adequate pain management treatment in connection with his chronic leg, back, and neck pain (Grievance No. SRCI.2015.12.115; also Grievance Nos. SRCI.2015.12.106, SRCI.2015.12.109), that defendants failed to order imaging scans in connection with his condition (Grievance No. SRCI.2015.05.030), that defendants failed to refer his case to outside medical specialists

(Grievance Nos. SRCI.2015.12.106, SRCI.2015.12.109), and that defendants caused him to experience painful skin lesions due to an allergic reaction to the pain medication Tramadol (Grievance No. SRCI.2015.06.130). As Lee does not bring this action in connection with any alleged deprivation of his rights as to which he has not exhausted available administrative remedies for PLRA purposes, defendants are not entitled to summary judgment in connection with Lee's claims on the ground that he failed to exhaust available administrative remedies in connection with any complained-of event underlying his claims.

Also as discussed above, Lee identified defendants Gulick and Koltes specifically by name in connection with their purported failure to treat his pain symptoms (Grievance Nos. SRCI.2015.12.106, SRCI.2015.12.109. In addition, I have found that SRCI responded to Lee's grievance (Grievance No. SRCI.2015.12.115) regarding SRCI medical staff's purported general failure to provide treatment to manage his pain symptoms without assigning error to Lee's failure to grieve each medical staff member separately, such that, under *Reyes*, 810 F.3d at 658, *supra*, SRCI's disposition of Grievance No. SRCI.2015.12.115 resulted in exhaustion of available administrative remedies as to all members of SRCI medical staff who contributed to the grieved conduct. Because I cannot determine on the basis of the evidence of record that any named defendant is not a member of SRCI medical staff, I therefore find that defendants are not entitled

/ / /

/ / /

/ / /

/ / /

/ / /

to summary judgment in connection with Lee's claims on the ground that he failed to exhaust available administrative remedies as to any specific defendant.

## CONCLUSION

For the reasons set forth above, defendants' motion (#37) is denied.

Dated this 26th day of June, 2012.

Honorable Paul Papak
United States Magistrate Judge