UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON

DERRYEL LEE,

                 Plaintiff,

      v.

GARTH GULICK, et al.,

                 Defendants.

2:17-cv-42-JR

ORDER

Russo, Magistrate Judge:

Pro se plaintiff, an inmate at Snake River Correctional Institution (SRCI), brings this civil rights action pursuant to 42 U.S.C. § 1983 challenging the conditions of his confinement.

## BACKGROUND

Plaintiff alleges he has suffered from pain and numbness in his legs, back and neck for years and that

> The doctors at the Oregon Department of Corrections at Snake River Correctional Institution, namely Dr. Gulick, Dr. Koltes and Chief Medical Officer Dr. Steven Shelton from Salem, the Therapeutic Level Committee (TLC), nurses Wick, Curtis and White and officer Defrance, with deliberate indifference and wanton infliction of pain, have failed to provide proper and accepted standard medical diagnosis and treatment for a serious medical problem that would alleviate Mr. Lee's pain. They

have unnecessarily added to the pain, anxiety and suffering by allowing this condition to persist, having an adverse effect on his daily activities.

Amended Complaint (doc. 13) at p. 2.

Plaintiff further alleges diagnosis using X-rays have revealed no source for his pain and that his requests for further testing including MRIs and CT scans have been denied. Id. In addition, plaintiff asserts he has been denied referral to a specialist. Id.

Plaintiff alleges despite suffering excruciating pain for two years, the only remedies prescribed have been "stretching, multiple NSAIDS, and Tramadol, which exacerbated painful skin lesions due to an allergic reaction." Id. at p. 3. Moreover, plaintiff asserts he has requested further diagnosis to find the cause of his pain and has been told by Dr. Gulick that, "the pain is all in your head", "there is nothing we will do about it", "the DOC will not pay for anything" and by staff that "He is only looking for the drugs.". Id. at p. 3-4.

Plaintiff seeks $2,000,000 in damages[1] and a "proper diagnosis and treatment for both physical and mental conditions." Id. Plaintiff further requests "that a restraining order be put in place preventing Dr. Garth Gulick and Dr. Koltes from having anything to do with his continuing medical needs." Id. at p. 5.

DISCUSSION

Plaintiff has an Eighth Amendment right to necessary medical treatment. See Estelle v. Gamble, 429 U.S. 97, 103 (1976) ("An inmate must rely on prison authorities to treat his medical needs"); Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000) ("Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety."). To sustain a claim based on inadequate medical treatment, plaintiff must

---

[1] Plaintiff has not alleged a claim against any defendant in their individual capacities. Accordingly, the Eleventh Amendment bars any claim for money damages. See, e.g., Koch v. Jester, 2013 WL 6422276, at *5 (D. Or. Dec. 9, 2013).

establish the existence of "a serious medical need" and show that defendant's "response to the need was deliberately indifferent." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006). A serious medical need exists if "the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" Id. (citation omitted).

Prison officials may demonstrate deliberate indifference by denying, delaying, or intentionally interfering with medical treatment, or by the way in which medical treatment is provided. Id.; Hallett v. Morgan, 296 F.3d 732, 744 (9th Cir. 2002). Mere difference of medical opinion does not establish deliberate indifference. Clement v. Gomez, 298 F.3d 898, 904 (9th Cir. 2002).

A. Undisputed Facts

The undisputed facts,[2] viewed in a light most favorable to plaintiff demonstrate the following:

1. Pain Treatment

Upon intake at SRCI, plaintiff received a physical screening exam on May 29, 2003. Declaration of Bryon Hemphill, M.D., in Support of Motion for Summary Judgment (doc. 59) at ¶ 6. Plaintiff identified a history of joint pain, prior surgery on his back and knees, and a history of an on-going eczema skin condition. Id.

On January 21, 2015, the Therapeutic Level of Care Committee (Committee) approved a regimen of Tramadol (an opiate pain medication) for six months to relive plaintiff's joint pain. Ex. 1 to Hemphill Declaration (ODOC Medical Chart) at pp. 123, 780-81. On July 20, 2015, the

---

[2] Defendants submit the declaration of Bryon Hemphill, M.D., along with the medical records of plaintiff's treatment while incarcerated. In response to the motion for summary judgment, plaintiff offers only his own argument and does not point the court to any records to support his claims.

Committee approved another six-month regimen of Tramadol because the medication appeared to be effective at treating plaintiff's pain. Hemphill Declaration at ¶ 10.

However, defendants discontinued Tramadol on August 25, 2015 in an abundance of caution because plaintiff complained of a skin rash. Id. at ¶ 11. At this time, defendants provided plaintiff with access to non-aspirin pain medication three times a day as needed for pain management. Id. Defendants also provided plaintiff with Desipramine to treat depression from October 14, 2015 to October 21, 2015.

On December 10, 2015, defendants prescribed Toradol, a non-steroidal anti-inflammatory drug, to treat plaintiff's joint pain. Id. at ¶ 13. Indeed, defendants note plaintiff was continuously provided with medication to treat his on-going pain such as: Gabapentin to treat nerve pain prescribed on January 4, 2016, April 25, 2016, and May 18, 2016; Toradol prescribed on January 15, 2016; Norco from March 7, 2016 to March 17, 2016, and June 17, 2016 to July 8, 2016; and Neurontin prescribed on April 22, 2016. Id. at ¶ 14.

On August 13, 2016, the Committee increased plaintiff's Norco prescription. Id. at ¶ 15. Pain and depression medication prescriptions continued in December 2016, January 2017, and March 2017. Id. at ¶ 16.

On June 30, 2017, plaintiff received approval for a lower sleeping bunk to reduce joint pain aggravation, and the Committee again approved additional pain medication. Id. at ¶ 17. Defendants continued plaintiff's prescription for Gabapentin on July 25, 2017, Neurontin on August 23, 2017, Toradol on October 18, 2017, and Norco from November 17 to December 11, 2017. Id. at ¶ 18.

2. MRIs and CT Scans

On January 21, 2015, plaintiff received an MRI of his cervical and lumbar spine from an outside medical facility in Idaho which was used to help treat his back pain. Declaration of Bryon Hemphill, M.D., in Support of Motion for Summary Judgment (doc. 59) at ¶ 21 and Ex. 1 to Hemphill Declaration (ODOC Medical Chart) at pp. 654-55. Plaintiff received another series of MRIs of his spine on December 14, 2015 showing no changes. Id. at ¶ 22, Ex. 1 at 651-53.

On February 18, 2016, plaintiff had an MRI of his left hip, showing degenerative issues, but no acute injuries, after he reported pain due to a fall. Id. at ¶ 23, Ex. 1 at p. 650.

On March 28, 2016, an MRI of plaintiff's chest was taken, after he reported shortness of breath and weakness, showing no issues. Id. at ¶ 24, Ex. 1 at p. 649.

On June 6, 2016, plaintiff received an MRI of his left shoulder and arm, following complaint of joint pain, which showed chronic degenerative changes, but no fractures or dislocation. Id. at ¶ 25, Ex. 1 at pp. 646-48. On this date, an MRI of plaintiff's neck and cervical spine showed mild spinal canal narrowing. Id. at ¶ 26, Ex. 1 at pp. 644-45. A further MRI was conducted on January 4, 2018. Id. at ¶ 32.

Although the Committee approved a CT scan of plaintiff's cervical spine, on October 8, 2016, plaintiff refused the appointment because he was only offered something to relax him rather than "put [him] out." On November 26, 2016, and January 13, 2017, plaintiff again refused CT scans. Id. at ¶¶ 27-30. Plaintiff finally underwent a CT scan of his cervical on March 14, 2017. Id. at ¶ 31, Ex. 1 at pp. 637-38.

3. Outside Referrals

Plaintiff has received significant treatment outside of the SRCI facility including the MRIs and CT scans noted above. In addition, on February 12, 2015, plaintiff received an intra-articular

facet steroid injection in his spine by Dr. Christian Gussner of Idaho Physical Medicine and Rehabilitation. Id. at ¶ 36, Ex. 1 at p. 1099. On April 1, 2015, plaintiff was referred to Dr. Brock Anderson, a dermatologist at Snake River Dermatology in Fruitland, Idaho. Id. at ¶ 37. Moreover, SRCI physicians have consulted with neurosurgeons regarding joint and spine pain, including Dr. Richard Zimmerman and Dr. Kenneth Little. Id. at ¶¶ 39-40.

4. Skin Condition Treatment

As noted above, plaintiff identified a history of an on-going eczema skin condition during his prison intake. Also as noted above, plaintiff has been referred to an outside dermatologist for treatment. Medical staff have provided plaintiff with directions to minimize eczema breakouts. Id. at ¶ 43.

On February 17, 2015, plaintiff complained of an allergic skin rash reaction to the medication Flomax. In response to plaintiff's grievance, the medical director noted that the rash began before taking Flomax and that the complaints continued after plaintiff stopped taking the medication. Id. at ¶ 47, Ex. 3 at pp. 1-2.

During his visit to Snake River Dermatology, Dr. Anderson found no medical evidence that plaintiff's skin condition was related to any medication and prescribed Triamcinolone cream and Clobetasole to reduce swelling, itching, and individual lesions. Id. at ¶ 48. In addition, during this appointment, a skin biopsy was taken which also failed to demonstrate any relationship between plaintiff's skin condition and his medications. The test showed the condition was more consistent with neurodermatitis. Plaintiff received a prescription of Hibiclens along with instructions for use. Id. at ¶ 49.

On August 13, 2015, plaintiff filed a grievance asserting Tramadol caused an allergic skin reaction. The medical director noted Dr. Anderson's evaluation showed no link between his skin

reaction and Tramadol, however, Dr. Anderson agreed to discontinue Tramadol in an abundance of caution. Id. at ¶¶ 50-52.

B.  Plaintiff Fails to Demonstrate a Violation of the Eight Amendment

Plaintiff asserts defendants "continued to push the use of Tramadol even though his prior records would show that … there were previous examples of these recurring [skin lesions] when treated with Tramadol," and that the dermatologist determined the two issues were related. However, plaintiff provides no support for these assertions and indeed the record before the Court directly contradicts them. Plaintiff also asserts the pain treatment offered was not effective and is "constantly withheld." Again, plaintiff offers no evidence to support these assertions and, in fact, the record shows significant ongoing pain treatment including the prescriptions of a variety of narcotic pain medications. Finally, plaintiff concedes he has in fact received MRIs and CT scans as well as outside treatment, but now complains he suffers "tremendous pain just being delivered for transport."[3]

To the extent plaintiff alleges deliberate indifference based on the course of treatment chosen by defendants, plaintiff must set forth facts showing that his treatment "was medically unacceptable under the circumstances" and was chosen "in conscious disregard of an excessive risk" to plaintiff's health. Hamby v. Hammond, 821 F.3d 1085, 1092 (9th Cir. 2016) (citations omitted). Given defendants' response to plaintiff's complaints and the efforts undertaken to manage his pain and skin condition, plaintiff cannot do so.

Even if defendants' chosen course of treatment could be considered negligent due to plaintiff's continued complaints, mere negligence in diagnosing or treating medical conditions

---

[3] Plaintiff did not allege deliberate indifference related to transport for outside treatment and tests in his Amended Complaint. Plaintiff alleged only that MRIs and CT scans have been denied and that no referrals to specialists have been made.

does not amount to deliberate indifference in violation of the Eighth Amendment. Gamble, 429 U.S. at 105-06 (holding that "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment"). Accordingly, plaintiff fails to establish "a purposeful act or failure to respond" to his serious medical needs, Jett, 439 F.3d at 1096.[4]

Because plaintiff fails to establish a violation of his constitutional rights, he is not entitled to the requested injunctive relief and defendants' motion for summary judgment is granted.

## CONCLUSION

Defendants' motion for summary judgment (doc. 58) is granted. The Clerk shall enter a judgment of dismissal.

DATED this 26th day of June, 2019.

/s/ Jolie A. Russo
JOLIE A. RUSSO
United States Magistrate Judge

---

[4] Defendants also assert they are entitled to qualified immunity. Even if plaintiff could establish his medical treatment was constitutionally deficient, his claim still fails. It is not clearly established that treating pain and skin conditions with a variety of medications including narcotics and relying on outside consultations and tests amounts to cruel and unusual punishment in the face of continued complaints from plaintiff. See Saucier v. Katz, 533 U.S. 194, 201-02 (2001).